IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD LEE MANN,

       Plaintiff,

vs.                                          No. CIV 07-0645 JB/ACT

ROCKY FERNANDEZ
an Officer of the Socorro, New Mexico
Police Department, Individually and
in his Official Capacity, JOE HALEY,
Chief of the Socorro Police Department,
individually and in his Official Capacity,
SOCORRO POLICE DEPARTMENT,
a Division of the City of Socorro,

       Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Reopen Discovery and

for Amended Scheduling Order, filed June 24, 2008 (Doc. 47). The Court held a hearing on October

17, 2008. The primary issue is whether Plaintiff Richard Lee Mann's new counsel has shown good

cause to reopen discovery and to amend the scheduling order because his prior counsel, Dennis W.

Montoya, allegedly did not conduct adequate discovery before the deadline for discovery expired.

During the hearing the issue was narrowed to whether the Court should reopen discovery to the

limited extent of allowing Mann to designate a rule 26 medical expert. Because the record before

the Court demonstrates that Mann's prior counsel made a deliberate choice to not designate a

medical expert, and because the record does not at this time reveal good cause to reopen discovery,

the Court will not allow Mann to designate an expert. The Court will not, however, foreclose Mann

from re-raising the issue if he is able to make a detailed and particularized showing why an expert

is necessary for his case and is otherwise able to show good cause.

## FACTUAL BACKGROUND

This case is a civil rights action brought against the Defendant Socorro Police Department and two Socorro police officers. On or about April 24, 2005, Defendant Rocky Fernandez arrested Mann. See Exhibit A to Notice of Removal, Complaint for Civil Rights Violations, Supervisory Liability, and Municipal Liability and Punitive Damages ¶ 12, at 4, filed April 23, 2007, filed in this Court July 9, 2007 (Doc. 1-1)("Complaint"). Mann alleges that Fernandez used excessive force when arresting him, leaving him with serious injuries that he believes will affect him for the rest of his life and require surgery. See id. ¶¶ 13-14, at 4. Mann also alleges that Defendant Joe Haley and the Socorro Police Department failed to adequately train and supervise Fernandez, or that Fernandez' conduct is a result of official policy. See id. ¶¶ 20-21, 25-26, at 5-6.

The parties agree that Mann was arrested for DWI and taken to a local hospital for blood testing, although they dispute that Fernandez used excessive force against Mann when arresting him. Mann is a disabled veteran and has injuries that pre-date the incident, making medical testimony -- which could establish that his alleged injuries from the arrest are not pre-existing  -- important to his case.   See Transcript of Hearing at 6:9-12,6:23-7:1 (taken October 17, 2008)(Doc. 63)("Tr.")(Sirignano).

## PROCEDURAL BACKGROUND

Discovery in this case closed on October 5, 2008. Mann fired his former attorney and obtained new counsel shortly before the close of discovery. His new attorneys now seek to reopen discovery, and in particular to be allowed to designate an expert. Because discovery is largely self-functioning, the Court is often unaware of what discovery is taking place, what is not being done, and whether the case is even active at most times. The Court here, even after extensive briefing,

remains somewhat in the dark about the state of Mann's discovery efforts to date.  It appears that Mann has conducted some written discovery, and there is a suggestion of some independent investigation, but it appears undisputed that Mann has not served requests for production or admissions.

  1.  **<u>Initial Scheduling Order and Rule 26 Disclosures</u>.**

  For the majority of the discovery period Mr. Montoya represented Mann.  On August 30, 2007, the Court entered its Initial Scheduling Order, requiring the parties to meet and confer, and to make rule 26 disclosures.  <u>See</u> Doc. 6.  The parties submitted initial rule 26 disclosures.  Mr. Montoya did not designate a rule 26 expert physician in the Joint Status Report.  <u>See</u> Joint Status Report at 7, filed September 25, 2007 (Doc. 8)(stating  that "Plaintiff's experts" are "Unknown at this time").  The parties proposed, however, that Mann's expert reports, if any, would be due on March 31, 2008.  <u>See</u> <u>id.</u> at 8.

  At the initial scheduling conference, on September 27, 2007, Stephen French, the Defendants' counsel, stated that it was difficult to counter treating physician testimony because they did not have to do expert reports, and asked that Mr. Montoya have the treating physicians file reports for any testimony they planned to give on causation or in reliance on other medical reports. <u>See</u> Federal Digital Tape Recorder at 9:29:00-29:33 (September 27, 2007)(French)("FTR").  Mr. Montoya stated that, because the physicians worked for the VA and because standard practice was for physicians to rely on other's reports, he could not agree with Mr. French's request, but would try to work something out with Mr. French if he was going to ask the physicians directly about causation.  <u>See</u> FTR at 9:29:34-30:15 (Montoya).  The Court then informed the parties about its opinion in <u>Sturgeon v. ABF Freight Systems, Inc.,</u> No. CIV  02-1317 JB/WDS, Memorandum Opinion and Order, entered January 14, 2004 (Doc. 121), and how it tended to view the testimony

of treating physicians.  See FTR at 9:30:17-34:40 (Court).

On January 31, 2008, the Court entered its Scheduling Order, see Doc. 15, and Order adopting the Joint Status Report and Provisional Discovery Plan, except as modified by the Scheduling Order, see Doc. 16.  The Scheduling Order was atypical, in that the parties requested that the Court set deadlines for discovery related to experts separate from those related to all other discovery, thus suggesting that experts were going to be an important part of the case.  Among other deadlines in the Scheduling Order, the Court ordered: (i) termination for non-expert discovery: February 27, 2008; (ii) motions relating to non-expert discovery (including, but not limited to, motions to compel and motions for protective order): March 18, 2008; (iii) identification of Mann's expert witnesses and disclosure of the plaintiff's expert reports: March 31, 2008; (iv) identification of the Defendants' expert witness and disclosure of defense reports: April 30, 2008; (v) closure of expert discovery: May 30, 2008; (vi) motions related to experts filed and served by June 20, 2008; (vi) pretrial motions, filed and served by June 20, 2008; (vii) consolidated final Pretrial Order, Mann to the Defendants on or before August 13, 2008, and the Defendants to the Court on or before August 19, 2008; (viii) motion hearing: August 6, 2008 at 1:30 p.m.; (ix) pretrial conference on August 20, 2008 at 1:30 p.m.; and (x) jury selection/jury trial on a trailing calendar beginning on September 15, 2008.  See Scheduling Order at 1-2.

### 2.    **Amended Scheduled Orders.**

Before Mann's new counsel made their appearance, the Court granted two discovery deadline extensions.  On February 5, 2008, Mann filed an Unopposed Motion to Extend Discovery Deadlines until March 27, 2008, because "both parties desire to conduct additional discovery in this matter, and the extension will allow sufficient time for the attorneys to conduct discovery in a manner not disruptive to their schedules."  Doc. 18 at 1.  Mann noted: "[T]he requested extension

will not interfere with any other deadlines set forth in the scheduling order of January 21, 2008."
Id.  On February 13, 2008, the Court granted the motion, and while the deadline extended was not
explicitly identified in the order, extended the deadline for non-expert discovery that was the subject
of the requested extension to March 27, 2008.  See Order Granting Unopposed Motion to Extend
Discovery Deadlines at 1, entered February 13, 2008 (Doc. 19).

On April 29, 2008, the parties filed a Joint Motion for Amended Scheduling Order, see Doc.
36, which the Court granted, see Amended Scheduling Order, entered May 2, 2008 (Doc. 39).  The
new schedule provided: (i) that non-expert discovery was to be completed by June 6, 2008; (ii) that
the deadline for filing motions related to non-expert discovery be extended to July 11, 2008; (iii) that
the deadline for the Defendants' expert reports, pursuant to rule 26, was extended until August 15,
2008; (iv) that the deadline for Mann's supplemental reports for audio expert,[1] if any, would be
extended until September 5, 2008; (v) that discovery related to experts would be extended to
October 5, 2008; (vi) that motions related to experts shall be filed with the Court and served on the
opposing party by November 7, 2008; (vii) that pre-trial motions, other than discovery motions,
must be filed with the Court and served upon the opposing party by December 19, 2008; (viii) that
Mann must send the Pre-Trial Order to the Defendants by February 10, 2009; (ix) that the
Defendants must send the Pre-Trial Order to the Court by February 17, 2009; (x) that a motion
hearing was scheduled for January 6, 2009; (xi) that a pre-trial conference was set for February 18,
2009 at 9:00 a.m.; and (xii) that this matter was set for jury selection/jury trial on a trailing calendar
beginning on March 16, 2009 at 9:00 a.m.  See Amended Scheduling Order at 2-3.

---

[1] Mann has retained an audio expert to analyze Fernandez' belt-tape recording of Mann's
arrest.

-5-

**3.** __Discovery__**.**

It is difficult for the Court to understand how much discovery has taken place. Mann contends that basic and key discovery remains undone; the Defendants contend that the parties have engaged in significant discovery. Within the original discovery time period, Mann served limited discovery on the Defendants. Mann's new counsel, Amy Sirignano, stated that Mr. Montoya did four things during nine months of discovery: (i) rule 26 disclosures; (ii) "a very limited set of interrogatories"; (iii) supplemental rule 26 disclosures; and (iv) served answers to the Defendants' interrogatories and requests for production. Tr. at 5:17-23 (Sirignano). Additionally, Mr. Montoya informed the Defendants' counsel, Stephen French, that, in preparation for the trial, he was conducting substantial independent research. Mr. French also stated that Mann has a significant number of documents from the Defendants. See id. at 12:23-24 (French).

**4.** __New Counsel__**.**

Believing that Mr. Montoya was not diligently prosecuting his case, Mann discharged Mr. Montoya. Mr. Montoya then filed an Unopposed Motion to Withdraw as Attorney on May 21, 2008. See Doc. 41. Although the motion was not formally granted until October 10, 2008, see Order Granting Unopposed Motion by Attorney Dennis W. Montoya to Withdraw as Counsel for Plaintiff Richard Lee Mann (Doc. 56), Ms. Hawk and Ms. Sirignano entered their appearances on May 28, 2008 and have been acting as Mann's attorneys, see Entry of Appearance (Doc. 43)(Hawk), Entry of Appearance (Doc. 44)(Sirignano). After reviewing the discovery that was done in the case, Mann's new counsel determined that Mr. Montoya had not made any requests for production or admissions, and had not designated a rule 26 medical expert. See Motion ¶¶ 2-3, at 1-2. Although depositions had been scheduled, the parties jointly agreed to continue these depositions to a later date to allow Mann's counsel sufficient time to prepare. Counsel have also met and attempted to

resolve discovery issues without seeking the Court's intervention.

Mann now moves the Court, through his new counsel, for an order reopening discovery and for an amended scheduling order. The discovery that Mann seeks includes, but is not limited to: (i) requests for admissions that would allow the parties to narrow issues to be litigated; (ii) requests for production of key documents including the Socorro Police Department's Excessive Force Policy, Fernandez' personnel and training records; (iii) amendment of witness lists and related discovery to include depositions; and (iv) the designation of a rule 26 expert physician. See Reply to Defendant's Response to Plaintiff's Motion to Reopen Discovery and for Amended Scheduling Order at 10, filed July 23, 2008 (Doc. 51)("Reply"). Mann also requests that discovery be reopened in general and that an amended scheduling order be entered that would: (i) extend non-expert discovery to 90 days from entry of the order; (ii) extend motions relating to non-expert discovery to 105 days from entry of the order; (iii) extend due date for Defendants' expert reports to 65 days from entry of the order; (iv) extend the due date for Mann's expert reports to 35 days from entry of the order; (v) extend expert-related discovery to 100 days from entry of the order; and (vi) extend motions relating to experts to 115 days from entry of the order. See Motion at 4.

Mann argues that his discovery problems are not a result of his own acts or negligence. He acknowledges that "[a]n attorney's acts and omissions will reflect on the client if the course of action is . . . the result of a deliberate strategy," but not when it is the result of mere inadvertence or neglect. Motion at 2. Mann notes that the Court can modify scheduling orders upon a showing of "'good cause.'" Id. at 3 (quoting Fed. R. Civ. P. 16(b)(4)). Mann contends that he is not responsible for the discovery problems and that reopening discovery will not interfere with judicial efficiency and will help to streamline the case. See Motion at 3.

The Defendants counter that Mann is seeking to reopen discovery because of a dispute with

how Mr. Montoya chose to proceed with discovery.  See Response to Motion to Reopen Discovery and for Amended Scheduling Order [Doc. 47] at 3, filed July 8, 2008 (Doc. 49)("Response")(brackets in original).  The Defendants contend that, under Smith v. United States, 843 F.2d 166 (10th Cir. 1987), discovery should not be reopened here.  They maintain that inadequate discovery is not good cause for reopening discovery.  See id. at 5.  The Defendants also note that they have agreed to reschedule depositions.  See id. at 2 n.1.

In reply, Mann argues that his former counsel demonstrated a "complete failure . . . to prosecute this case."  Reply at 6.  Mann contends that, under the factors in Smith v. United States, discovery should be reopened.  Mann asserts that trial is not imminent, there would be no prejudice to the Defendants, and Mann himself diligently removed his former counsel once he learned of the failure to pursue discovery, even if counsel was not himself diligent.  See Reply at 8-9.  In support of this last point, Mann's new counsel notes that they are reluctant to attach letters between Mann and Mr. Montoya because of attorney-client privilege, but state that in April 2008, Mann wrote to Mr. Montoya about key discovery efforts that he wanted Mr. Montoya to pursue and, in May 2008, in a second letter, Mann explained his reasons for discharging Mr. Montoya, which included discovery failures.  See id. at 8 n.5.

At the hearing, Ms. Sirignano stated that the heart of the relief Mann sought was to be allowed to do requests for production and to designate a rule 26 medical expert.  See Tr. at 6:1-4.  Ms. Sirignano stated that she would be satisfied with that amount of discovery and did not need a complete reopening of discovery.  See id. at 12:12-20 (Court & Sirignano).  Mr. French agreed that he would produce Fernandez' personnel and training records, the Socorro Police Department's excessive force policy, and the Socorro Police Department's policy on the storage and use of belt tapes, but was opposing allowing Mann to designate a rule 26 medical expert.  See Tr. at 19:1-19:24

(Court & French).

Mr. French reminded the Court that he had, during the rule 16 conference for the case, asked the Court to order Mann to use a rule 26 medical expert, because Mann was going to use his Veteran's Administration ("VA") doctors, from which, according to Mr. French, it was difficult to get information because of the governing statutes. See Tr. at 12:25-13:8 (French). According to Mr. French, Mr. Montoya stated that he did not have to use a rule 26 expert and could rely on Mann's treating physicians. See id. at 13:6-7. Mr. French maintained that the Court would not order Mann to use a rule 26 expert, but warned Mr. Montoya about an opinion the Court had written, see Sturgeon v. ABF Freight Systems, Inc., which places limits on what a treating physician may testify about. See Tr. at 13:9-19 (French & Court). The Court has reviewed the recording of the initial scheduling conference and it largely conforms to Mr. French's recollections.

At the hearing on this motion, Mr. French argued that Mr. Montoya's statements at the scheduling conference indicate that Mr. Montoya made a deliberate, tactical decision not to use a rule 26 expert and that, as a result, Mr. French spent many hours trying to get information from the VA doctors and was finally granted permission to depose one of the treating doctors. See id. at 13:20-14:7 (French); 15:15-18. Mr. French also contended that, after Mr. Montoya would give a release for the VA records, Mann would call the VA to revoke the release. See id. at 14:2-15:4. Mr. French argued that, as a result of these actions, Mann was personally involved in delaying and obstructing the progress of the case. See id.

Ms. Sirignano stated that the VA doctors had been treating Mann before and after Fernandez allegedly injured Mann. See Tr. at 20:18-21:3 (Court & Sirignano). The Court questioned Mann's new counsel about what they would need an expert for that they could not get out of Mann's treating physicians. Sharon Hawk, one of Mann's new attorneys, said that they could not get a medical

opinion from the treating physicians, which would include reviewing medical records and opining on the reasonableness of Mann's treatment and the reasonableness of the cost of treatment. See id. at 23:12-24:1 (Hawk).  In response to the Court's concerns whether having a medical expert was a case-dispositive issue, Ms. Hawk stated that she could not get an opinion as to injury, causation, and damages without a rule 26 expert.  See Tr. at 24:2-17 (Court & Hawk).  Ms. Hawk stated that she had not asked the treating doctors yet what their opinions on causation might be, because she was waiting for the Court's ruling on this issue.  See id. at 25:2-19.  She stated that she planned on deposing the treating physicians, but had not yet, and that mostly she and Ms. Sirignano had reviewed the medical records and other documentation.  See id. at 25:9-14 (Hawk).  Mr. French contended that Mann could establish damages through his treating physicians, but admitted that it would be difficult without a rule 26 expert.  See Tr. at 18:9-25 (Court & French).  Mr. French also indicated that the VA doctors treating Mann had been treating him for some time, but that Mann's records dated at least to 1991, if not earlier, and that the treating physicians would not able to review and opine on those records.  See id. at 27:11-28:8.  Ms. Hawk contended that the treating physicians would not be able to fully understand and talk about Mann's past injuries, and that Mann required a rule 26 expert to be on equal footing with the Defendants.  See Tr. at 29:4-13 (Hawk).

## **RELEVANT LAW REGARDING DISCOVERY**

"Discovery plays an important role in our adversarial system: full development of the facts surrounding a matter furthers 'the purpose discovery is intended to serve -- advancing the quest for truth.'"  Trujillo v.  Board of Educ. of Albuquerque Public Schools, 2007 WL 1306560 at *2 (D.N.M.)(Browning, J.)(quoting Taylor v. Illinois, 484 U.S. 400, 430 (1988)).  Discovery is also, ideally, a self-executing system.  A spirit of cooperation between opposing counsel is thus important and generally results in the filing of fewer discovery motions, reduction in the costs of litigation, and

conservation of limited judicial resources.  Sometimes, though, the discovery system breaks down.  Determining whether to reopen discovery requires striking a delicate balance between the interests of efficiency and accountability on the one hand, and a recognition of the importance of discovery for resolving cases on the merits on the other.

> 1.  **Scheduling Orders.**

"The District Court has wide discretion in its regulation of pretrial matters."  Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990).  Scheduling orders, however, "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  See Street v. Curry Board of County Comm'rs, 2008 WL 2397671 at *6 (D.N.M.)(Browning, J.).  The Advisory Committee Notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.  Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a 'manifest injustice' or 'substantial hardship' test.  Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4), Advisory Committee Notes, 1983 Amendment.

In the United States Court of Appeals for the Tenth Circuit, the concepts of good cause, excusable neglect, and diligence are all related.  As this Court has stated:  "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  Street v. Curry Board of County Comm'rs, 2008 WL 2397671 at *6.  "The Tenth Circuit . . . has recognized the interrelation between 'excusable neglect' and 'good cause.'"  Pulsecard, Inc. v. Discover Card Services Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(citing Broitman v. Kirkland (In re Kirkland), 86 F.3d 172, 175 (10th Cir. 1996)).  In Broitman v. Kirkland (In re Kirkland), the Tenth Circuit dealt with the definition of "good cause" in the context of rule 4(j).  The Tenth Circuit

noted:

> [W]ithout attempting a rigid or all-encompassing definition of good cause, it would appear to require *at least as much* as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified' is normally required.

86 F.3d at 175 (quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir.1987))(emphasis in Putnam v. Morris and Broitman v. Kirkland (In re Kirkland))(internal quotation marks omitted).  The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'"  Broitman v. Kirkland (In re Kirkland), 86 F.3d at 175.

Other courts within the Tenth Circuit have held that "the 'good cause' standard primarily considers the diligence of the party . . . [.]  The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."  Pulsecard, Inc. v. Discover Card Services Inc., 168 F.R.D. at 301 (internal quotation marks omitted)(omission in original).  In the United States District Court for the District of Utah, the Honorable Dale A. Kimball, United States District Judge, found "good cause" existed to amend the court's scheduling order when the court decided to permit the plaintiff's counsel to withdraw as counsel.  See Kee v. Fifth Third Bank, 2008 WL 183384, *1 (D. Utah).  Judge Kane reasoned: "[I]n light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order."  Id.

**2.      Reopening Discovery.**

In Smith v. United States, the Tenth Circuit discussed the factors to be considered in

determining whether to reopen discovery.  These factors include:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

834 F.2d at 169 (citing Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1213 (3d Cir. 1984);

Wilk v. American Medical Association, 719 F.2d 207, 232 (7th Cir. 1983), cert. denied, 467 U.S.

1210 (1984); Geremia v. First National Bank of Boston, 653 F.2d 1, 5-6 (1st Cir. 1981)).

Courts have generally not treated a need for expert testimony as being significantly different from other reasons for reopening discovery.  See, e.g., Sil-Flo, Inc. v. AFHC, Inc., 917 F.2d at 1511, 1514 (applying Smith v. United States, finding that a plaintiff failed to make diligent use of an initial discovery period, and affirming a trial court's denial of a motion to reopen discovery where counsel sought additional discovery on a limited issue for which they failed to obtain an expert before the close of discovery); Webber v. Mefford, 43 F.3d 1340, 1345 (10th Cir. 1994)(rejecting the plaintiffs' contention that they did not know the importance of expert advice until new counsel was retained and affirming a trial court's denial of a motion to reopen discovery via a motion to reconsider under rule 59(a)).

> It is always easy in hindsight for counsel to realize there may be a better way to try a case the second time around.  Hindsight advantage necessarily inures to both sides, but this does not mean a court, when faced with procedural error, *must* allow either side to introduce totally new expert witnesses to bolster or impeach earlier evidence.

Cleveland By and Through Cleveland v. Piper Aircraft Corp., 985 F.2d 1438, 1449-50 (10th Cir. 1993)(emphasis in original).

The United States Court of Appeals for the Fifth Circuit considers four elements to determine if a scheduling order should be modified: (i) the explanation for the party's failure to meet the

deadline; (ii) the importance of what the court is excluding; (iii) the potential prejudice if the court allows the thing that would be excluded; and (iv) the availability of a continuance to cure such prejudice.  See S&W Enters., LLC v. SouthTrust Bank of Alabama, 315 F.3d 533, 536 (5th Cir. 2003)).

> **3.      Imputing a Lawyer's Actions to the Client.**

An attorney's acts and omissions will reflect on the client if the course of action is the result of a deliberate strategy.  See Smith v. United States, 834 F.2d at 171 (stating that a client is bound by his lawyer's representation "when the lawyer (or the client) makes a tactical decision and his noncompliance with the court's directive is not a product of inadvertence.").  In Smith v. United States, the Tenth Circuit affirmed the district court's ruling denying a request to reopen discovery and dismissing the action for failure to prosecute when counsel declined to go forward with the case without discovery.  Quoting from Link v. Wabash, 370 U.S. 626 (1962), the Tenth Circuit explained:

> Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.   Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney . . . .  [A]ny rule which considered the client's lack of fault would be to visit the sins of client's counsel on the opposing counsel.

Smith v. United States, 834 F.2d at 170-71 (internal quotation marks omitted).  In affirming the dismissal, the Tenth Circuit stated: "We need not allocate fault, if any there be, between lawyer and client because both are bound by trial strategy."  Id. at 171.

Conversely, when "a course of conduct results from mere inattention by counsel" and is not a deliberate strategy, a client is generally not bound by his or her attorney's actions.  Federal Deposit Ins. Corp. v. Daily, 973 F.2d 1525, 1531 (10th Cir. 1992).  "If the fault lies with the attorneys, that is where the impact of sanctions should be lodged."  Mulvaney v. Rivain Flying Serv., Inc. (In re

Baker), 744 F.2d 1438, 1442 (10th Cir. 1984)(en banc), cert. denied, 471 U.S. 1014 (1985).  Smith

v. United States itself noted: "A recent line of authority suggests that it often will not be possible

to treat the client and the lawyer as a unit for sanctioning noncompliance with the court's rules and

scheduling orders if it is apparent that the client has not participated in the transgression."  834 F.2d

at 171 (citing Woodmore v. Git-N-Go, 790 F.2d 1497 (10th Cir. 1986); D.G. Shelter Products Co.

v. Forest Products Co., 769 F.2d 644 (10th Cir. 1985); Hollis v. United States, 744 F.2d 1430 (10th

Cir. 1984); In re Sanction of Baker, 744 F.2d 1438, 1442 (10th Cir.1984)(en banc), cert. denied, 471

U.S. 1014 (1985)).  The Tenth Circuit noted:

> [D]ismissal is a drastic remedy, one this court has been reluctant to sustain for
> isolated instances of noncompliance with a lower court's scheduling orders.  If
> noncompliance is due to lawyer inadvertence or mistake, the court may take action
> against the lawyer after considering the inconvenience and expense (to the court
> system and opposing parties) due to noncompliance.  There comes a point, however,
> when the conduct of the lawyer and client can no longer be viewed as discrete, rather
> the lawyer represents his client and the client is bound by that representation.  That
> point has been reached when the lawyer (or the client) makes a tactical decision and
> his noncompliance with the court's directive is not a product of inadvertence.

Smith v. United States, 834 F.2d at 170.

## ANALYSIS

In his motion, Mann asks that the Court reopen discovery and enter an amended scheduling

order.  At the hearing, however, the issues were narrowed considerably.  The Defendants have

agreed to provide certain requested documents and principally oppose only reopening discovery to

allow Mann to designate a rule 26 medical expert.  Having considered the arguments at the hearing,

it appears to the Court that Mr. Montoya did not name a medical expert as a deliberate, tactical

decision.  Because Mr. Montoya's decision would thus bind Mann as well, the Court will not allow

him to designate a medical expert at this time.  The Court will not, however, completely foreclose

the issue.  If Mann believes, after completing his preparatory work with the VA doctors, that the VA

doctors are insufficient, he may, with a more particularized showing of need, reapproach the Court on this issue.

I.      **SEVERAL OF THE ISSUES RAISED ARE NOW MOOT.**

A number of the issues raised in the motion are now moot.  Mr. French has agreed to provide Mann's counsel with Fernandez' personnel and training records, the Socorro Police Department's excessive force policy, and the Socorro Police Department's policy on the storage and use of belt tapes.  See Tr. at 19:1-19:24 (Court & French).  The Defendants have agreed to reschedule depositions, and Ms. Sirignano stated that, with the documents she requested, which the Defendants have now agreed to produce, she would be satisfied and prepared for depositions.  See id. at 12:18-20 (Sirignano).  Only the issue whether Mann should be allowed to designate a rule 26 medical expert remains a live dispute.

II.     **THE COURT WILL NOT, AT THIS TIME, ALLOW MANN TO DESIGNATE A RULE 26 MEDICAL EXPERT.**

Mann's primary argument for why he should be allowed to designate a medical expert at this time is that his former counsel essentially abdicated his responsibilities for the case and failed to designate an expert.  After the hearing, however, the Court believes that this alleged failure was not an act of oversight or inadvertence, or even a form of extreme neglect, but rather was a deliberate tactical decision on Mr. Montoya's part.  As such, Mr. Montoya's actions are fully attributable to Mann.  With this fact in mind, the Court does not believe that there is sufficient justification for reopening discovery at present.

A.      **THE ACTIONS OF MANN'S EARLIER COUNSEL WERE DELIBERATE CHOICES THAT BIND MANN AS WELL.**

Mann agrees that "[a]n attorney's acts and omissions will reflect on the client if the course of action is . . . the result of a deliberate strategy," as opposed to mere inadvertence or neglect, which

-16-

might not.  Motion at 2.  Tenth Circuit case law is also clear on this point.  "[W]hen the lawyer (or the client) makes a tactical decision . . . his noncompliance with the court's directive is not a product of inadvertence."  Smith v. United States, 834 F.2d at 171.  Smith v. United States recognized that there was a line of authority in the Tenth Circuit indicating that it was not appropriate to sanction a client when the client was not a participant in noncompliance with court orders, but nonetheless found that it was unnecessary to allocate the fault in that case "between lawyer and client because both are bound by trial strategy."  Id. at 171.  Later cases have followed suit and noted that clients are bound when the attorney's actions is a matter of litigation strategy.  See Federal Deposit Ins. Corp. v. Daily, 973 F.2d at 1531.  Even if the Court accepted Mann's position that not allowing him to designate an expert would amount to a quasi-sanction, that "sanction" would be appropriate when the decision not to designate is a strategic decision.

Based upon the proceedings at the initial scheduling conference, it appears to the Court that Mr. Montoya deliberately chose not to designate a rule 26 expert and instead to rely upon Mann's treating doctors at the VA.  Mr. French requested, at the conference, that Mr. Montoya have the treating physicians produce expert reports, because Mr. French believed that it would be difficult to defend against their testimony otherwise.  See  FTR at 9:29:00-29:33 (French).  Mr. Montoya stated that, because the physicians worked for the VA and because standard practice was for physicians to rely on other's reports, he could not agree with Mr. French's request, but would try to work something out with Mr. French if he was going to ask the physicians directly about causation.  See id. at 9:29:34-30:15 (Montoya).  Both Mr. French and Mr. Montoya, at the conference, seemed to assume that Mr. Montoya would be using the VA treating physicians.  Additionally, Mr. Montoya never indicated in any written filings that he planned to use an expert.  This case is thus not one where counsel notes that he or she will get an expert and then never follows

through with that representation.  Furthermore, the parties, while Mr. Montoya was on the case, moved for an extension of deadlines which specifically included an extension for Mann's audio expert, but did not mention any other experts for Mann.  See Joint Motion for Amended Scheduling Order at 2.  After considering the information the Court has, it appears to the Court that Mr. Montoya made a conscious, tactical decision to use Mann's treating physicians at the VA rather than obtaining a medical expert under rule 26.

This conclusion might be undercut were the apparent strategy one that a lawyer would be unlikely to deliberately make, but choosing to forego expert testimony in lieu of treating physicians' testimony is something that strikes the Court as a plausible tactic.  Treating physicians may testify and offer opinions within the scope of their "personal care and treatment" of patients.  Sturgeon v. ABF Freight Systems, Memorandum Opinion and Order at 5.  Mann has apparently been receiving treatment from his doctors at the VA both before and after his arrest and alleged injuries at Fernandez' hands.  See Tr. at 20:18-21:3 (Court & Sirignano).  In this situation, the Court can see that an attorney might rationally conclude that additional experts would be unnecessary.  Avoiding hiring other experts would also help reduce litigation costs.  When the treating physicians work for the VA, such an approach might also, as Mr. French argues, serve the somewhat sharper litigation tactic of making discovery difficult for the opposing side.  Forgoing rule 26 experts thus, in this situation, is a reasonable litigation tactic, which adds support to the other indications that Mr. Montoya made a deliberate choice, and did not act inadvertently or neglectfully.

While Mann was obviously dissatisfied with his previous counsel's representation, it was only when discovery was almost closed that he decided to switch counsel.  Mann does not adequately explain why his decision to change counsel should allow him to reopen discovery or whether the disagreement he now has with this particular, deliberate choice of his previous counsel

-18-

is the reason for his discharging Mr. Montoya.  Because Mr. Montoya made a strategic decision when he opted to rely on the VA's treating physicians, that choice is binding on Mann.

**B.     THE OTHER RELEVANT FACTORS DO NOT SUPPORT REOPENING DISCOVERY AT THE PRESENT.**

Although his earlier counsel's deliberate decision binds Mann, that does not necessarily preclude the Court from reopening discovery if there is good cause.  That fact weighs heavily against there being good cause, but in some situations a litigant may be able to show that his or her reversing course is justified and demonstrate that, despite an earlier posture, good cause exists.  Mann's circumstances, however, do not present such a situation.  Some of the other factors under Smith v. United States favor reopening discovery, but not strongly enough to warrant reopening at this time in light of Mr. Montoya's strategic decision.

Smith v. United States identified six factors to be considered when determining whether to reopen discovery:

> 1) whether trial is imminent, 2) whether the request is opposed, 3) whether the non-moving party would be prejudiced, 4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, 5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and 6) the likelihood that the discovery will lead to relevant evidence.

834 F.2d at 169.  At this point, trial is not imminent.  Allowing a rule 26 expert will also almost certainly allow Mann to get relevant evidence he could not otherwise obtain.  The first and sixth factors thus favor Mann.

The remaining factors, however, favor the Defendants.  The request is opposed.  Given the amount of time and effort the Defendants have expended on seeking discovery from the VA with the understanding that Mann's case would turn on his treating physicians' testimony, there is likely at least some prejudice to the Defendants.  Because Mr. Montoya's deliberate decision binds Mann,

it also seems that the diligence and foreseeability factors favor the Defendants.  Because he was not intending to use a medical expert, Mr. Montoya did not pursue or foresee the need for such an expert.  The <u>Smith v. United States</u> factors thus tend to favor the Defendants.

The cases Mann cites dealing with good cause also do not support Mann's position.  Good cause, as a general matter, is related to excusable neglect.  <u>See</u>  <u>Pulsecard, Inc. v. Discover Card Services Inc.</u>, 168 F.R.D. at 301.  In seeking to show good cause, Mann must show *at least as much* as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice."  <u>Broitman v. Kirkland (In re Kirkland)</u>, 86 F.3d at 175 (quoting <u>Putnam v. Morris</u>, 833 F.2d at 905)(emphasis in <u>Putnam v. Morris</u> and <u>Broitman v. Kirkland (In re Kirkland)</u>).  Here, however, Mann is not seeking relief from an inability to comply with the relevant deadlines or even with relief from neglect.  Instead, he is seeking relief from a deliberate choice of his counsel that, because it is deliberate, must be imputed to Mann as well.

<u>Kee v. Fifth Third Bank</u> might provide some support for Mann's position, but that case is largely distinguishable.  The district court allowed the plaintiff's counsel to withdraw without the consent of the plaintiff, although it is not clear that the withdrawal necessarily was over the plaintiff's objection.  <u>See</u> 2008 WL 183384 at *1 (stating that counsel had "satisfied the requirements for withdrawing without Plaintiff's consent").  In light of there being good cause for the withdrawal, the court found that, similarly, there was good cause for amending the scheduling order, including vacating a trial setting.  <u>See id.</u>  The court did not, however, set new deadlines, but rather ordered that "either Plaintiff or his new counsel shall attempt to stipulate to an amended scheduling order with opposing counsel."  <u>Id.</u>  Because the opinion does not describe the basis for the good cause, it is difficult to say whether the case would be relevant to the circumstances.

-20-

Additionally, the court's vacating the deadlines appears to be a measure aimed at giving new counsel, who had not been retained at the time of the ruling, time to be prepared for the case and trial, and did not grant a specific extension, but rather permitted the new counsel to seek a stipulated scheduling order or else file another motion setting specific deadlines.  In sum, at this time, Mann has not shown a strong enough justification for reopening discovery because his new counsel want to pursue a different strategy than his old counsel did.

As indicated at the hearing, however, the Court will not at this time completely foreclose the possibility of allowing Mann to designate a rule 26 expert.  After Mann's new counsel have spoken with the treating doctors and received more specific information, they may be able to demonstrate that the treating physicians' testimony is inadequate and that this procedural matter would become a case-dispositive issue.  Treating physicians do not need to produce expert reports, see D.N.M.LR-Civ 26.3(b)(exempting treating physicians from rule 26(a)(2)(B) of the Federal Rules of Civil Procedure), and may offer their "observations based on personal knowledge, including the treatment of [a] party," Davoll v. Webb, 194 F.3d 1116, 1138 (10th Cir. 1999).  There are, however, restrictions on the scope of which a treating physician who is not testifying as an expert may testify.  See Sturgeon v. ABF Freight Systems, Memorandum Opinion and Order at 5 (limiting treating physician's testimony to personal care and treatment of party).  With more information, Mann may be able to articulate precisely his need for expert testimony and the consequences that failing to allow that testimony might have on the merits of his case.  Armed with such information, Mann might be able to show good cause why he should be relieved of the consequences of Mr. Montoya's deliberate choices.  The Court will not prevent Mann from returning to the Court to make such a request.  If he pursues this option, however, Mann should be careful to instruct the Court precisely why he needs expert testimony and why the testimony of his treating physicians would be

inadequate, in addition to explaining why these reasons amount to good cause and why he should not be bound by Mr. Montoya's litigation decisions.[2]

**IT IS ORDERED** that the Plaintiff's Motion to Reopen Discovery and for Amended Scheduling Order is denied in part as moot and denied in part without prejudice. The Court will not reopen discovery to allow Plaintiff Richard Lee Mann to designate a rule 26 medical expert at this time, without prejudice to him returning to the Court with a more particularized showing. The remainder of the motion is denied as moot.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Amy Sirignano
Law Office of Amy Sirignano, PC
Albuquerque, New Mexico

-- and –

Sharon B. Hawk
Hawk Law, PA
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Stephen G. French
Regina Y. York
French & Associates, P.C.
Albuquerque, New Mexico

  *Attorneys for the Defendants*

_____

[2] The Court notes that, with this memorandum opinion and order, the stay the Court ordered pending resolution of Mann's motion is no longer in effect. <u>See</u> Order to Stay Pretrial Deadlines at 1, entered September 10, 2008 (Doc. 54).